**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE PETREL | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-765 |
| | ) | District Judge Nora Barry Fischer |
| v. | ) | |
| | ) | |
| SABER HEALTHCARE HOLDINGS, LLC | ) | |
| d/b/a SABER HEALTHCARE GROUP, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

### I. INTRODUCTION

In this employment civil action, Plaintiff Jamie Petrel brings claims for religious discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.*; a claim for religious discrimination pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955; and a state law claim for tortious interference with bodily integrity, alleging that her employment was terminated because she refused the COVID-19 vaccine. (Complaint, ECF No. 1-1). Presently before the Court is Defendant Saber Healthcare Holdings, LLC's Renewed Motion to Compel Arbitration and to Stay Action Pending Arbitration (ECF No. 29), supporting brief, Concise Statement of Material Facts and accompanying Appendix, (ECF Nos. 30-32), Plaintiff's Brief in Opposition, Response to Plaintiff's Concise Statement of Facts and accompanying Appendix (ECF Nos. 34-36), and Defendant's Reply (ECF No. 37). After careful consideration of the parties' arguments, the Mutual Dispute Resolution Agreement (ECF No. 32-1 at 52-55), and other relevant documents set forth in the parties' Appendices, Defendant's Motion is granted for the following reasons.

### II. FACTUAL BACKGROUND

Plaintiff Jamie Petrel ("Plaintiff" or "Petrel") completed an Application for Employment with Defendant Saber Healthcare Holdings, LLC ("Saber" or "Defendant") on January 11, 2021, seeking employment as a physical therapist. (Concise Statement of Facts and Response thereto, ECF Nos. 31 & 35 ¶ 1). She was ultimately hired at Saber's Caring Heights facility. (*Id.*).

Prior to becoming an active employee, Saber required all potential new hires to complete onboarding documents. (*Id.* ¶ 3). It directed new hires to the onboarding process, administered through its then human resources information system, UKG.[1] (ECF No. 32-4 at 8). Plaintiff was directed to the onboarding module and assigned her personal email address as her username. (*Id.*). She was further directed to create her own unique password, whereafter she would be led through the onboarding process. (*Id.*).

The onboarding module contained several documents, each requiring the electronic signature of the new hire. (ECF No. 32-1 at 3-94). An arbitration agreement was included in the onboarding materials. (ECF No. 32-1 at 52-55). Plaintiff's electronic signature, dated February 20, 2021, appears at the end of the document. (ECF No. 32-1 at 55). After an introductory statement indicating a preference for resolving disputes internally, the "Mutual Dispute Resolution Agreement" ("Arbitration Agreement") states that the Employee and the Company "agree to use the arbitration procedures in this Agreement instead of a trial in court before a judge or jury." (Arbitration Agreement, ECF No. 32-1 at 52). After briefly summarizing the arbitration process, the Arbitration Agreement provides in relevant part as follows:

II.    **Covered Claims**

Other than as provided in this Agreement, to the maximum extent permissible under federal law, Employee and the Company agree that any controversy, dispute, or claim arising out of or related

---

[1] Saber no longer utilizes UKG. (ECF Nos. 31 & 35 ¶ 4). UKG admits in a December 6, 2024, letter to Saber's counsel that Saber was a former UKG customer, that Saber's "environment was decommissioned[,] and their data was destroyed post-termination." (ECF No. 34-6 at 1).

to the Employee's employment with the Company that could otherwise be raised in court ("Covered Claim") that the Company has against Employee or the Employee has against the Company, shall be settled exclusively by binding arbitration rather than in court.  It is the parties' intent that all claims between them covered by this Agreement are to be resolved through binding arbitration to the fullest extent permitted by federal law (and state law that is not preempted by federal law), not an administrative proceeding or court. . . . .

Covered claims include, but are not limited to, claims for wages and other compensation, breach of contract, . . . violation of public policy, wrongful termination; tort claims; claims for unlawful retaliation, discrimination and/or harassment; and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance, such as, for example, claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964 . . . .

. . .

## IV.    <u>Authority to Determine Arbitrability</u>

Except as provided in Section III, the arbitrator shall have the exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement (including all defenses to contract enforcement such as, for example, waiver and unconscionability) or the arbitrability of any claim. . . . .

. . .

## VI.    <u>Governing Law, Consideration, Severability, Final Agreement</u>

The Federal Arbitration Act (9 U.S.C. Sections 1, *et seq.*) shall govern this Agreement. State arbitration statutes shall apply only to the extent they are not preempted by the FAA.

. . .

**THIS CONTRACT IS A BINDING ARBITRATION AGREEMENT WHICH MAY BE ENFORCED BY THE PARTIES.**

**BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE RECEIVED, READ, AND HAVE HAD SUFFICIENT OPPORTUNITY TO CONSIDER THIS AGREEMENT. THE PARTIES UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT, THE PARTIES ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY OR PARTICIPATE IN A CLASS ACTION, AS**

**WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

(ECF No. 32-1 at 52-55) (emphasis in original).  Plaintiff's electronic signature, dated February 20, 2021, appears immediately after the capitalized, bolded language.  (*Id.* at 55).  A signature on behalf of the company also appears.  (*Id.*).

In addition to the Arbitration Agreement electronically signed on February 20, 2021, Defendant retained a series of additional documents from the module bearing the electronic, typewritten signature of Plaintiff "Jamie Petrel" dated February 20, 2021, some which contain Plaintiff's personal information contained in Plaintiff's personnel file.[2]  (ECF Nos. 31 & 35 ¶ 10).  Documents containing her personal information include Department of Homeland Security Form I-9, and IRS form W-4 for 2021.  (ECF No. 32-1 at 46-50 & 36-39).

Importantly, Plaintiff does not deny that she signed the Arbitration Agreement; she testified that she simply does not remember signing it:

> Q: Are you denying that you electronically signed this agreement?
>
> A: I don't remember signing this agreement.
>
> Q: But are you denying that you signed it?   Sort of a different question.
>
> A: Explain more.
>
> Q: Sure.  Are you denying that you typed your name here or do you just not remember?

---

[2] Other documents contained in the onboarding module include an Employee Consent/Declination for the Hepatitis B Vaccination; Acceptable Use Policy for Saber's electronic resources; Saber's Reasonable Accommodations of Disabilities Policy; New Hire Basic COVID-19 Information Fact Sheet; New Hire Benefits Eligibility and Acknowledgement; Bloodborne Pathogens/Hepatitis B information sheet; Drug Free Workplace Policy and accompanying Acknowledgement of Receipt; Code of Conduct and accompanying Employee Acknowledgement Form; Gait Belt Policy; Summary of HIPAA Privacy Rule; Mobile Community Broadcast "Opt-In" Authorization; Non-disclosure/Cooperation Agreement; Nondiscrimination Policy; PA Elder Justice Act Policy; Pennsylvania Resident Abuse Policy; Attendance Policy; Social Networking/Media Policy; and Workplace Violence form.  All except the COVID-19 Fact Sheet contain Petrel's electronic signature dated February 20, 2021.  The COVID-19 Fact Sheet, also containing Petrel's electronic signature, is dated February 26, 2021.  (ECF No. 32-1 at 3-94).

A: I don't remember doing it.

(ECF Nos. 31 & 35 ¶ 11; Petrel Dep., ECF No. 34-3 at 2, p.21).

Human Relations Director, Marie Cottrell, described the onboarding process. She testified that onboarding documents are sent to the personal email address of the new hire. (Cottrell Dep., ECF No. 24-1 at 6, p.27). The email contained instructions "on how to get into the system . . . ." (*Id.* at 5, p.13). Per the instructions, the new hire would create his/her own unique password to access the module. (Onboarding email to Plaintiff, ECF No. 32-4 at 8-9). The email sent to Petrel from Saber, dated February 16, 2021, provided in relevant part:

> Hello Jamie,
>
> Congratulations on your new position with SHG Therapy External LLC, part of the Saber Healthcare Family. We are excited you have decided to join our team and are looking forward to seeing you at orientation.
>
> The next step in your journey is to provide us with some additional information about yourself in our New Hire Onboarding module, which you'll find by following the link below. Please be sure to complete all of your information prior to your first day.
>
> Please click on the following link to access the onboarding application:
> https://onboarding.ultipro.com/SAB1001SHG
>
> **User Name:** XXXX@gmail.com[3]
>
> **Password: Please click on "Create/Reset your Password?** to get started and gain access to the site. Once you create your password, you will be led through our Onboarding process.
>
> . . .
>
> Please do not hesitate to reach out to your hiring manager or the HR/Payroll Representative if you have any questions.

---

[3] Consistent with Local Civil Rule 5.2.D. for the Western District of Pennsylvania regarding the redaction of personal identifiers, the Court redacts Plaintiff's personal email address.

(ECF No. 32-4 at 8-9) (emphasis in original). New hires were compensated for two (2) hours of their time to complete the onboarding documents. (Cottrell Dep., ECF No. 34-1 at 7, p.16). Cottrell further testified that if Plaintiff had not completed the onboarding process, she would not have become an active employee. (*Id.* at 7-8, pp. 16-17). Upon completion, Saber relied on UKG to provide documents to the company indicating that they were all fully executed. (*Id.* at 6, p.27).

III. PROCEDURAL HISTORY

Petrel commenced this civil action in the Court of Common Pleas of Allegheny County. (ECF No. 1-1). Thereafter, Saber filed a Notice of Removal on May 23, 2024. (ECF No. 1, corrected at ECF No. 10). The parties filed a Stipulation for Extension of Time to Answer on May 28, 2024 (ECF No. 3), which was granted by the Court on May 29, 2024. (ECF No. 6). Defendant was ordered to file its Answer or otherwise respond to the Complaint by June 28, 2024. (*Id.*). On June 28, 2024, Saber filed its initial Motion to Compel Arbitration and to Stay Action Pending Arbitration with Supporting Brief. (ECF Nos. 11 & 12). The Court ordered Plaintiff to file a response by July 19, 2024. (ECF No. 13). After the Court granted an unopposed motion for extension of time in which to respond (ECF Nos. 14 & 15), Plaintiff filed her Brief in Opposition on July 29, 2024. (ECF No. 16). Saber filed its Reply on August 12, 2024. (ECF No. 18). The Court ordered Plaintiff to file a sur-reply (ECF No. 19), which was filed on August 19, 2024. (ECF No. 20).

On September 5, 2024, the Court denied, without prejudice, Saber's Motion to Compel Arbitration and to Stay, so that the parties could conduct limited discovery as to whether there was mutual assent of the parties to enter into the Arbitration Agreement. After the completion of limited discovery, Defendant would be permitted to renew the Motion to Compel Arbitration pursuant to Federal Rule of Civil Procedure 56. (ECF No. 21). After a 30-day extension of

discovery (ECF No. 27), Defendant filed its Renewed Motion to Compel Arbitration and Motion to Stay on February 7, 2025. (ECF No. 29). In accordance with the Rule 56 summary judgment standard, Defendant filed a Brief in Support, Concise Statement of Material Facts, and accompanying Appendix. (ECF Nos. 30-32). On March 10, 2025, Plaintiff filed a Brief in Opposition (ECF No. 36), a Response to Defendants' Concise Statement of Facts (ECF No. 35) and accompanying Appendix (ECF No. 34). Defendant filed its Reply on March 24, 2025. (ECF No. 37). The Motion is ripe for disposition.

## IV. LEGAL STANDARDS

### A. Motion to Compel Arbitration and the Federal Arbitration Act

The Arbitration Agreement provides for final and binding arbitration pursuant to the Federal Arbitration Act ("FAA"). (ECF No. 32-1 at 55). The FAA "reflects a strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted). *See also MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) ("Following the enactment of the FAA, the Supreme Court has steadily advanced [the policy in favor of compelling arbitration over litigation] by guarding against unwarranted judicial interference with arbitration."). "The primary substantive provision of the FAA, [Section 2], provides that a written agreement to arbitrate 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Coulter v. Experian Info. Sols., Inc.*, Civil Action No. 20-1814, 2021 WL 735726, at *3 (E.D. Pa. Feb. 25, 2021) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2)). Section 2 "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Therefore, the FAA requires federal courts to "'enforce

privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'" *Berryman v. Newalta Env't Servs., Inc.*, Civil Action No. 18-793, 2018 WL 5723290, at *3 (W.D. Pa. Nov. 1, 2018) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

When evaluating a motion to compel arbitration, the federal court is "limited to a narrow scope of inquiry." *Id.* (quoting *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyds's*, 584 F.3d 513, 522 (3d Cir. 2009).

"However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." *Eichlin v. GHK Co.*, 746 F Supp.3d 247, 251 (E.D. Pa. 2024) (quoting *Coulter*, 2021 WL 735726, at *4) (internal quotation omitted); *see also MZM Constr. Co., Inc.*, 974 F.3d at 402 ("[U]nder section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Importantly, if the party opposing arbitration does not challenge the delegation provision specifically, "the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co., Inc.*, 974 F.3d at 399 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).

B. <u>Motion for Summary Judgment</u>

As noted, *supra* at III, on September 5, 2024, the Court afforded the parties an opportunity to develop the factual record by allowing for limited discovery "as to whether there was mutual assent to enter into the arbitration agreement . . . ." (ECF No. 21 at 2-3) (relying on *Checchia v. SoLo Funds, Inc.*, No. 23-2193, 2024 WL 3717491, at *2 (3d Cir. Aug. 8, 2024) & *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013)). The Court's Order was premised upon the fact that the Complaint did not reference the Arbitration Agreement, and because the parties relied upon matters outside of the pleadings in support of, and in opposition to, Defendant's initial Motion to Compel Arbitration (ECF No. 11).

Accordingly, the Court will employ the Rule 56 summary judgment standard to resolve the pending motion. *See Guidotti*, 716 F.3d at 776 (If the agreement to arbitrate is not apparent on the face of the complaint, or if the non-moving party has "come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, . . . the issue should be judged under the Rule 56 standard."). *See also Young v. Experian Info. Sols., Inc.*, 114 F.4th 314, 319 (3d Cir. 2024) (same).

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257. The movant on summary judgment carries the burden of demonstrating the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden is on the nonmoving party to go beyond the pleadings

with affidavits, depositions, answers to interrogatories or other discovery to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."). The court, however, must consider the evidence in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

## V.  DISCUSSION

Here, Plaintiff does not attack the delegation provision of the Arbitration Agreement specifically. *See* Plaintiff's Brief in Opposition (ECF No. 36). As such, the Court will treat it as valid. *See MZM Constr. Co., Inc.*, 974 F.3d at 399. Rather, Plaintiff challenges whether there is a valid agreement to arbitrate. Plaintiff contends, *inter alia*, that she does not recall electronically signing the Arbitration Agreement. Accordingly, her argument goes to contract formation, and must be decided by the Court. *See Carrone v. UnitedHealth Grp., Inc.,* No. 20-2742, 2021 WL 3520809, at *1 (3d Cir. Aug. 11, 2021).

To determine whether the parties agreed to arbitration, the Court turns to "ordinary state-law principles that govern the formation of contacts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chic, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Although the Arbitration Agreement does not contain a choice of law provision, the parties rely primarily on Pennsylvania law. *See* ECF Nos. 30, 36 & 37. "Before concluding that there is a valid contract under Pennsylvania law, the court must 'look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3)

whether there was consideration." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)

(quoting *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998)).

Here, Plaintiff's arguments in opposition to the Motion to Compel focus only on the first

element.  (Brief in Opposition, ECF No. 36).  In essence, she argues that because she has no

recollection of signing the Agreement, she did not manifest an intention to be bound by it.  To this

end, Plaintiff's Opposition Brief opens with the statement of her coworker, Sarah Schwarz, who

expressed surprise about the existence of the Arbitration Agreement:

> I feel like with everything[,] I would have remembered something
> labeled arbitration agreement.  I would have seen what it was called
> and had to had at least wondered what it was . . . .

(ECF No. 36 at 1) (quoting text message from Schwarz to Petrel, ECF No. 34-10 at 6).[4]  Plaintiff

comments on Schwarz's surprise arguing that Defendant "intentionally hid the agreements from

its employees, if it even provided the agreements to them at all."  (*Id.*).  Plaintiff then refers to a

text message exchange she initiated with Defendant's Director of Rehabilitation, Todd Kerestes,

questioning whether he remembered if Defendant required new hires to sign an arbitration

agreement.  (*Id.*).  Kerestes responded that he "was told [that as to] the onboarding[,] everyone

clicks through and electronically signs without fully reading and that was thier [sic] angle to sneak

it in."  (*Id.*; *see also* ECF No. 34-10 at 2).

Yet, Plaintiff offers only speculation as to how her electronic signature was affixed to the

Arbitration Agreement.  She comes forward with no evidence to raise an issue of material fact that

anyone other than Plaintiff signed the Agreement.  Speculation alone will not raise an issue of

---

[4] Sarah Schwarz also has a civil action pending against Saber in the United States District Court for the Western District of Pennsylvania, assigned to United States District Judge Robert J. Colville.  In that case, Saber's initial Motion to Compel was denied without prejudice so that the parties could engage in limited discovery.  *Schwarz v. Saber Healthcare Holdings, LLC,* Civil Action No. 2:24-cv-151 at ECF No. 14 (W.D. Pa. Mar. 5, 2025).  On March 14, 2025, Judge Colville granted a Motion for Extension of Time to Complete Discovery, and further ordered that any subsequent motion to compel arbitration shall be filed by May 29, 2025.  (ECF No. 16).

material fact on summary judgment.  *See Matsushita*, 475 U.S. at 586 (nonmoving party must do more than show some metaphysical doubt as to the material facts on summary judgment).  Instead of coming forward with evidence, Plaintiff attempts to support her speculations with the fact that UKG, Defendant's former human resources information system vendor, destroyed Saber's data after UKG was terminated by Saber, leaving no audit trail for her electronic signature on the Arbitration Agreement.  (ECF No. 34-6 at 1).  Relying heavily on the absence of an audit trail, Plaintiff directs the Court to Pennsylvania and federal statutes, arguing that because Defendant allegedly violated these statutes in failing to maintain an audit trail, it is precluded from attributing the electronic signature to Plaintiff.  (ECF No. 36 at 4-9).  Plaintiff, however, cites to no caselaw in support of these arguments.

Initially, Plaintiff directs the Court to the Pennsylvania Electronic Transactions Act ("PAETA"), 73 P.S. § 2260.701.  She contends that because UKG destroyed Defendant's data after it no longer provided services to Saber, the security measures were "commercially unreasonable," making it impossible to determine whether these documents were reviewed and signed from a computer controlled or associated with Plaintiff.  (ECF No. 36 at 4-9).  As noted by Defendant, however, by its terms, § 2260.701 of PAETA does not apply to electronic transactions involving "consumers," who are defined as "[a]n individual involved in an electronic transaction primarily for personal, family or household purposes."  *See* 73 P.S. § 2260.704 & § 2260.103.  The Arbitration Agreement does not concern a commercial transaction, but a personal agreement between Plaintiff and her employer.  Rather, courts in the Third Circuit have relied on § 2260. 305 of PAETA in holding that whether an electronic signature was the act of a person "may be shown in any manner."  *See* 73 P.S. § 2260.305(a) (whether electronic signature is attributable to a person may be "shown in any manner."); *see also Jackson v. ZEP Mfg.*, No. 5:23-cv-2622, 2024 WL

1175713, at *5 (E.D. Pa. Mar. 19, 2024) (citing 73 P.S. § 2260.305(a)); *Bonilla v. Adecco*, *USA, Inc.*, No. 5:23-cv-2741, 2024 WL 945310, at *5 (E.D. Pa. Mar. 5, 2024) (citing 73 P.S. § 2260.305(a)).  Therefore, Plaintiff's reliance on § 2260.701 of PAETA is misplaced.

Again, without supporting caselaw, Plaintiff directs the Court to 15 U.S.C. § 7001(c)(1)(D) of the Electronic Signatures in Global and National Commerce Act ("ESIGN Act"), which requires that consumers be provided with advance notice of situations where their access to electronic records related to electronic signatures may be imperiled.  Plaintiff contends that she was given no advance notice that UKG's audit trail underlying her electronic signature would become unavailable.  (ECF No. 36 at 9).  The provision of the ESIGN Act relied upon by Plaintiff, however, applies only to "transactions in or affecting interstate or foreign commerce[,]" and does not undermine the validity of her signature.  *See* 15 U.S.C. § 7001(c)(1).  Again, Plaintiff's invocation of this federal statute is inapplicable to the facts at bar.

Contrary to Plaintiff's arguments, the Court finds that there is a valid agreement to arbitrate.  The electronic signatures of Plaintiff and Saber are sufficient to indicate the parties' intent to be bound by the Arbitration Agreement.  *See Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313-14 (3d Cir. 2019) (citing 73 Pa. Stat. Ann. §§ 2260.301-.312) ("Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register assent."); *Jackson*, 2024 WL 1175713, at *5; *Bonilla*, 2024 WL 945310, at *5; *Alexander v. Acceptance NOW*, 1:22-CV-338, 2023 WL 4347039, at **3-4 (W.D. Pa. July 5, 2023) (electronic signature attributable to plaintiff); *Juric v. Dick's Sporting Goods, Inc.*, 2:20-CV-651, 2020 WL 4450328, at *10 (W.D. Pa. 2020) (citing *Schrock v. Nomac Drilling, LLC*, 2:15-cv-1692, 2016 WL 1181484, at *3 (W.D. Pa. Mar. 28, 2016) (noting that, where plaintiff was required to use private login information, known only to him, to electronically acknowledge an arbitration agreement, "[p]laintiff's naked assertions that

he never did so are insufficient to lead the Court to conclude otherwise.")).  In fact, Plaintiff has acknowledged the validity of electronic signatures.  *See* ECF Nos. 31 & 35 ¶ 22 ("Plaintiff has signed other agreements electronically and agrees that electronic signatures can be valid.").  The record reflects that Plaintiff accessed the onboarding module, and in doing so, formulated a unique password.  *See id.* at ¶¶ 3, 6, 7, 8, & 9.  She has come forward with no evidence that she shared this password with anyone, or that her unique password was otherwise compromised.

Moreover, Plaintiff's inability to remember whether she affixed her electronic signature to the Agreement does not raise an issue of material fact as to whether she assented to the Arbitration Agreement.  *See Martin v. Liberty Mut. Ins. Co.*, Civil Action No. 21-4360, 2023 WL 2588165, at *4 (E.D. Pa. Mar. 20, 2023) ("While the Third Circuit has not ruled directly on the issue, courts within the Third Circuit have generally found that an electronic signature is binding even where the signer does not remember electronically signing the document.") (citing *Jallad v. Madera*, 474 F. Supp. 3d 667, 672 (E.D. Pa. 2020) (finding that an electronic signature on a limited tort waiver form was valid in spite of the plaintiff's argument that there was no evidence of actual knowledge of the waiver); *Dicent*, 2018 WL 4171600, at *4 (finding that the plaintiff had failed to create a genuine issue of fact when denying he electronically signed a document in spite of security measures tying his identity to the electronic signature); *Schrock*, 2016 WL 1181484, at *3-4 (finding that "naked assertions" denying an electronic signature were not enough to create a genuine dispute of material fact as to the validity of an electronic signature)); *see also Gomez v. Rent-a-Center, Inc.*, Civ. No. 2:18-cv-1528, 2018 WL 3377172, at *4 (D.N.J. July 10, 2018) (plaintiff's claim that she could not remember signing arbitration agreement insufficient to raise a genuine issue of material fact).[5]

---

[5]  The Court notes that "in the absence of proof of fraud, failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof."

VI.  CONCLUSION

    Plaintiff does not deny signing the Arbitration Agreement.  She argues only that she does not remember signing it.  She further suggests, without any supporting evidence, that anyone could have affixed her electronic signature to the Arbitration Agreement.  The record reflects that per instructions sent to her personal email account, a unique password was required to access the onboarding module. She has come forward with no evidence that anyone had access to her unique password or that it was otherwise compromised.

    Accordingly, the Court will grant Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration.  (ECF No. 29).

    An appropriate Order will follow.

    Dated:  May 7, 2025


                                        _s/Nora Barry Fischer_
                                        Nora Barry Fischer
                                        Senior U.S. District Judge


cc/ecf:  All counsel of record

---

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (1983), *quoted in, Dicent*, 758 F. App'x at 314.  *See also McWreath v. Range Resources-Appalachia, LLC*, 81 F. Supp.3d 448, 471 (W.D. Pa. 2015), *aff'd,* 645 F. App'x 190 (3d Cir. 2016) ("[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood.") (other quotations omitted).  Here, Plaintiff was sufficiently educated in that she applied for, and was ultimately hired by Saber, as a physical therapist.